UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

Edward Wayne Sullivan,

                    Plaintiff,

          v.                                          C/A No. 8:04-651-GRA-BHH

The Cato Corporation,                                 ORDER
                                                      (Written Opinion)
                    Defendants.

          This matter is before the Court for a review of the magistrate's Report and

Recommendation made in accordance with 28 U.S.C. § 636(b)(1)(A) and Local Rule

73.02(B)(2)(g), D.S.C., and filed on February 10, 2006.  Plaintiff filed this action on

March 2, 2004, claiming that, in the termination of his employment, Defendant

discriminated against him on the basis of age in violation of the Age Discrimination

in Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq.*, retaliated against him for

taking medical leave in violation of the Family and Medical Leave Act ("FMLA"), 29

U.S.C. § 2601, *et. seq.*, denied him benefits under the Employment Retirement

Income Security Act ("ERISA"), 29 U.S.C. § 1002, et. seq., breached an implied

oral contract of employment, and Plaintiff seeks equitable relief pursuant to the

common law doctrine of promissory estoppel.   Defendant filed a motion for

summary judgment on August 18, 2005.  Plaintiff filed a response to Defendant's

motion on October 12, 2005.  Defendant filed a reply brief on October 24, 2005.

The magistrate recommends granting Defendant's motion for summary judgment as to Plaintiff's ADEA, ERISA, breach of contract, breach of implied warranty of good faith and fair dealing, and promissory estoppel claims. The magistrate, however, recommends that Defendant's motion for summary judgment be denied as to Plaintiff's FMLA claim. For the reasons stated herein, the magistrate's Report and Recommendation is hereby adopted.

## Standard of Review

The magistrate makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections to the Report and Recommendation, this Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983). Defendant filed objections to the Report and Recommendation on March 2, 2006; Plaintiff did not file objections.

**Discussion**

Defendant objects to the magistrate's recommendation to deny summary judgment as to Plaintiff's retaliation claim under the FMLA, arguing that the evidence cited by the magistrate does not establish an issue of material fact as to Plaintiff's FMLA retaliation claim for two reasons: 1) the evidence is so unreliable and inferences in Plaintiff's favor so tenuous, that no reasonable juror could rely on such evidence; and 2) even if the evidence cited by the magistrate was sufficient to establish an issue of fact as to whether Plaintiff's superior was frustrated by Plaintiff's FMLA leave, it nevertheless fails as competent evidence sufficient to establish liability for unlawful retaliation.

The magistrate found that Plaintiff has established a *prima facie* case for retaliation under the FMLA. (Mag. Rep. 15). However, the magistrate further determined that Plaintiff has not produced evidence from which a jury could conclude that Defendant's legitimate, non-discriminatory reasons for termination were pretextual. *Id.* Therefore, the magistrate considered Plaintiff's FMLA retaliation claim under the ordinary principles of proof, stating:

> While the court disagrees that the plaintiff has "direct evidence" of retaliatory motive, it appears that the plaintiff had indirect evidence, "sufficiently probative of the issue" of retaliation, to create a genuine issue of fact to submit to the jury. Although a close call, the Court finds that the following evidence, when viewed in a light most favorable to the plaintiff, is sufficient for the plaintiff's FMLA claim to survive.

*Id.* at 15-16 (internal citations omitted).

I.    Defendant first objects to the "indirect evidence" pointed to by the magistrate

3

to deny summary judgment as to Plaintiff's FMLA retaliation claim.

      A.    The Testimony of Tom Cole

The magistrate noted the deposition of Tom Cole to the effect that Max Arenas, Plaintiff's immediate superior, had expressed frustration that Plaintiff had taken FMLA leave.  According to Cole, "It was said that, it's not like I dislike [Plaintiff], its he can't get the job done, you know, he's not responding well, he's having medical issues.  And I remember this conversation because it was right after [Plaintiff] had gone out . . . he was out on F.M.L.A." . . . which really twisted Max [Arenas]." (Cole Dep. 26).

Defendant argues that Cole's testimony is not credible as he was terminated by Defendant for misconduct, and was in litigation against the company at the time of his deposition (and currently).  Defendant also notes that the conversation Cole alleges he had with Arenas regarding Plaintiff could not have taken place when and where he claimed it did.  Cole claimed the conversation with Arenas took place on a trip that he and Arenas took from Baton Rouge to Shreveport, Louisiana and thought it took place within 45 days of Plaintiff's termination.  (Cole Dep. 28). Defendant produced documentary proof, including Cole's own signed expense reports, that Cole and Arenas were not together in Louisiana at any time during the calendar year in which Plaintiff was terminated, and not together at all during that year except for a trip in Mississippi prior to Plaintiff providing notice of his intent to take leave.  Defendant concludes that either the conversation did not take place at

4

all or it took place at a time when the topic of Plaintiff's absence on FMLA leave could not possibly have been discussed. Defendant, therefore, argues that no reasonable juror could conclude that Cole's description of the conversation was accurate.

The Court disagrees. While Defendant's offer of proof works to impeach the credibility of Cole's description of his alleged conversation with Arenas, such proof does not warrant a total dismissal of Cole's testimony. Construing all inferences and ambiguities against the movant and in favor of the non-moving party, the Court finds that the alleged conversation between Cole and Arenas is highly relevant to Plaintiff's FMLA retaliation claim, even though Cole may be mistaken as to the circumstances surrounding the conversation. This is a genuine issue of material fact, and the Court will not resolve this factual dispute in a motion for summary judgment. Defendant further argues that Plaintiff cannot prove his case by offering the speculation of third party witnesses as to what Arenas was thinking, citing *Mitroff v. Xomax Corp.*, 797 F.2d 271, 276 (6th Cir. 1986) and *Carroll v. Town of University Park*, 12 F.Supp. 2d. 475, 486 (D.Md. 1997). While Defendant is correct on this point, Defendant admits that Cole's recollection of what Arenas said and Cole's observation of Arenas' demeanor is admissible. The Court finds such admissible evidence to be sufficient to find that a jury could reasonably conclude that Cole's testimony makes it more likely that Defendant retaliated against Plaintiff for taking FMLA leave.

5

B.    Arenas' Telephone Call to Plaintiff While Plaintiff was on FMLA Leave

The magistrate also relied upon testimony in Plaintiff's deposition to the effect that Arenas called him on one occasion while Plaintiff was on leave and spoke to him rudely.  (Mag. Rep. 17).   Arenas allegedly said to Plaintiff, "I don't understand what your problem is?"  (Pl. Dep. 41).  Defendant argues that Arenas' remarks to Plaintiff were understandable due to the fact that Arenas was calling about reports that were due in January, were long overdue when Plaintiff left for his leave, and Plaintiff did not notify Defendant of his FMLA leave until the day after his leave began.  Defendant, therefore, argues that no jury could reasonably conclude that Arenas' single telephone call to Plaintiff under those circumstances could give rise to an inference that Arenas subsequently took action to terminate Plaintiff's employment in retaliation for taking FMLA leave.

The Court disagrees.  As the magistrate correctly noted, while calling an employee during an FMLA leave of absence is not *per se* evidence of retaliation or interference, *see Dodgen v. The Kent Mfg. Co.,*955 F. Supp. 560, 564 (D.S.C. 1997), calling can be probative of the issue when the plaintiff is asked to continue to do work-related matters while on leave.  *See Arban v. West. Pub. Corp.*, 345 F.3d 390 (6th Cir. 2003).  "This evidence in conjunction with the close proximity between his return from FMLA leave and his termination, when taken together and viewed making inferences in favor of the plaintiff, create a genuine issue of fact in regards to the plaintiff's FMLA claim."  (Mag. Rep. 18).  In fact, the decision to

terminate Plaintiff was made while Plaintiff was still on leave.  *See* (Sandler Dep. 11).

> C.    Arenas' Notes

The magistrate similarly concluded that "a reasonable juror might conclude that Arenas' notes (or RLPM log) express dissatisfaction with the plaintiff's absence on FMLA leave." (Mag. Rep. 16).  Arenas describes the following entry in his notes:

> February 21st, '03, [Plaintiff] never turned in four target DM reports that were already late.  Dan and I met with him on January 30th.  He assured me we would have it that week. [Plaintiff] went out with eye surgery on Tuesday, February 11th.  Not back yet.  Also, I e-mailed him February 14th to do appraisal – I meant his self-appraisal – by February 20th.  Said he would.  Not turned in yet.  Can't reach him.

(Arenas Dep. 34).

Defendant contends that this fails as proof that Plaintiff's termination was retaliatory for the same reasons as Plaintiff's own testimony about the telephone call: Arenas was frustrated about the overdue reports and the lack of notice of Plaintiff's leave for scheduled eye surgery.  For the same reasons as discussed above, the Court disagrees.  The proximity of time between these notes, the alleged telephone call, the decision to terminate Plaintiff, and the ultimate termination of Plaintiff creates an inference to which a juror might reasonably conclude that Plaintiff's use of FMLA leave was an improper motivation for his termination.

II.    Defendant also objects to the magistrates recommendation on the ground that regardless of whether the evidence cited by the magistrate established that Arenas was frustrated by Plaintiff's use of FMLA leave, it was inadequate to

establish all the elements of an FMLA retaliation claim.

      A.      Retaliation as an Actual Cause of Plaintiff's Termination

Defendant argues that Plaintiff must establish an issue of material fact as to whether retaliatory animus was an actual cause of his termination. Defendant cites to *Hill v. Lockheed Martin Logistics Mgmt.,* 354 F.3d 277, 286 (4th Cir. 2004) for the proposition that in every employment discrimination case, the plaintiff ultimately must prove that the forbidden criterion "actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." However, the court's focus in *Hill* was to determine whether the "decisionmaker," as opposed to other managers or subordinates, applied the forbidden criterion. Defendant claims that Plaintiff offers no competent proof that Arenas acted upon his alleged frustration about Plaintiff's FMLA leave, nor that he was able to subvert the decisionmaking process to carry out his retaliatory intent. Defendant further argues that Plaintiff offers no proof that Arenas' superior, Robert Sandler, exhibited any frustration with his use of FMLA leave, and Defendant submits that Sandler undertook his own analysis and satisfied himself that Plaintiff was the lowest performing Regional Loss Prevention Manager ("RLPM").

The Court disagrees. Sandler, Senior Vice President and controller, was the ultimate decision maker who terminated Plaintiff. (Sandler Dep. 4). However, it is clear that Arenas heavily influenced the decision. Arenas was a vice president supervising all of the RLPMs, and reported to Sandler. (Sandler Dep. 11). In fact,

when asked for details regarding Plaintiff's performance, Sandler often deferred to Arenas for the information.[1]  As discussed above, there is sufficient evidence from which a reasonable juror could conclude that retaliatory animus was a motivating factor in Arenas' decision to terminate Plaintiff and that Arenas influenced Sandler to terminate Plaintiff as a result thereof.

      B.    Plaintiff's Termination Notwithstanding any Improper Retaliatory Motive

Defendant argues that the magistrate applied the mixed -motive standard, and, therefore, should have proceeded to determine whether Defendant's offer of proof was sufficient to demonstrate that Defendant would have made the same decision with regard to Plaintiff's termination regardless of any improper motive that may have existed, citing to *Baqir v. Principi*, 434 F.3d 733 (4th Cir. 2006). Defendant is correct.  However, because this Court finds that a genuine issue of material fact exists as to whether Defendant would have made the same decision to terminate Plaintiff regardless of any improper retaliatory motive toward Plaintiff for taking FMLA leave, the lack of a specific finding on this point by the magistrate does not render the Report and Recommendation erroneous.

Defendant points to such facts as Plaintiff was terminated as part of a

---

[1]When asked specifics about Plaintiff's allegedly deficient goal sheets, Sandler stated, "Max Arenas is the person who would receive all of the documentation from it, he'll be closer to it than I am." (Sandler Dep. 15 - 16).  When Sandler was asked how he received negative feedback he explained that "[o]n a weekly basis I would meet with Max and we would go over the performance of each of the people." (Sandler Dep. 16 - 17).  When asked about written documentation regarding Plaintiff's alleged deficiencies, Sandler refers to Arenas' notes.  (Sandler Dep. 19 - 20).  Sandler also indicated that all negative feedback from the field came through Arenas.  (Sandler Dep. 20).

reduction in force, that Plaintiff was the lowest ranked RLPM, that Plaintiff's territory was ideal for absorption by other RLPMs, and that Sandler and Arenas were dissatisfied with Plaintiff's performance prior to receiving notice of his FMLA leave, to show that Plaintiff would have been terminated despite any improper motive stemming from Plaintiff's use of FMLA leave.  Defendant also notes that Plaintiff's position has not been replaced since his termination almost three years ago.  While these findings led the magistrate to conclude that Plaintiff's termination was non-pretextual, the Court nonetheless finds there is sufficient evidence to create a genuine issue of material fact as to whether Plaintiff would have been terminated had he not taken FMLA leave.

As discussed above, there are facts sufficient to create genuine issue of material fact regarding whether Defendant had a mixed-motive in terminating Plaintiff: whether Arenas' frustration with Plaintiff taking FMLA leave influenced Defendant's decision to terminate Plaintiff.  The most troubling fact is that Arenas and Sandler made the decision to terminate Plaintiff while Plaintiff was on FMLA leave, which was taken by Plaintiff to correct the physical problem (his eyesight) that was allegedly the cause for his low performance in timely reporting.  The coincidence of deciding to make a reduction in force, to terminate Plaintiff as a result of that reduction in force, and to make these decisions during the same time that Plaintiff took FMLA leave creates a factual question for the jury to decide. Regarding Plaintiff's RLPM score, Defendant prepared an evaluation for 2002 that

includes a low overall score compared to other RLPMs.  Dan Sikorra, former head

of Loss Prevention for Defendant's It's Fashion! division, stated the following in an

affidavit about the undated, unsigned 2002 evaluation for Plaintiff:

> I recall writing this evaluation, and then going over it with Max Arenas.
> The results  prior to discussion with Max were in the good/fully
> competent range.  Max directed me to revise the evaluation numbers
> downward to move [Plaintiff's] result to the marginal rate which I did.
> Even though [Plaintiff] had not been performing as well as he had in the
> past I felt that his lower performance was due mostly to health issues
> and that he should have been rated in the good/competent range.

Also, when Plaintiff was terminated, Defendant indicated that Plaintiff was not

eligible for re-hire.  The Court agrees with Plaintiff that these facts indicate a motive

other than a reduction in force.

> C.    Direct Evidence of Discrimination

Lastly, Defendant argues that only direct evidence is sufficient to avoid

summary judgment under the mixed-motive theory in a FMLA retaliation claim, citing

*Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277 (4th Cir. 2004), *Mereish v.*

*Walker*, 359 F.3d 330 (4th Cir. 2004), *EEOC v. Warfield-Rohr Casket Co.*, 364 F.3d

160 (4th Cir. 2004), and *Warch v. Ohio Casualty Ins. Co.*, 435 F.3d 510 (4th Cir.

2006).  Defendant, therefore, argues that because the magistrate concluded that

none of the evidence Plaintiff submitted in connection with his FMLA claim qualified

as direct evidence, that Plaintiff should not be permitted to proceed with a mixed-

motive theory.

The Fourth Circuit has not definitively addressed this issue.  Under the mixed-

11

motive framework established by the Supreme Court in *Price Waterhouse v. Hopkins* a plaintiff must prove through direct evidence that retaliation was a substantial motivating factor in the termination decision. *See* 490 U.S. 228, 258 (1989). The *Price Waterhouse* framework was altered by Congress for Title VII claims in the Civil Rights Act of 1991 such that plaintiffs can invoke the codified mixed-motive framework by putting forth any type of evidence, direct or circumstantial, which demonstrates that discriminatory animus was a motivating factor for an employment practice. *See* 42 U.S.C. § 2000e-2(m) (2003); *Desert Palace, Inc. v. Costa* 539 U.S. 90 (2003). The cases cited  above by Defendant all concern claims under the ADEA, not the FMLA.  In those cases the Fourth Circuit Court of Appeals suggested, without expressly holding, that the mixed-motive provision under the Civil Rights Act of 1991 likely does not apply to the ADEA.  The Court then held in each case that there was simply no evidence, direct or circumstantial, upon which a jury could reasonably conclude that age was a motivating factor in the termination decision.

The Fifth Circuit Court of Appeals explicitly rejected the Fourth Circuit dicta in *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, to hold that the mixed-motive framework of the Civil Rights Act of 1991 does apply to the ADEA, such that a plaintiff can prove her case with circumstantial evidence. *See  Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir.2004).  Subsequently, the Fifth Circuit held that the mixed-motive framework of the Civil Rights Act of 1991 also applies to the

12

FMLA. *See Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). In an abundance of caution, and due to the lack of a definitive ruling in the Fourth Circuit on this issue and considering the Fifth Circuit's reasoning, this Court will allow Plaintiff to proceed to prove his claim for retaliation under the FMLA with circumstantial evidence under the mixed-motive framework of the Civil Rights Act of 1991.

### Conclusion

After a review of Defendant's objections and the magistrate's Report and Recommendation, this Court finds that the report is based upon the proper law. Accordingly, the Report and Recommendation is accepted and adopted in its entirety.

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment be GRANTED IN PART such that Plaintiff's ADEA, ERISA, breach of contract, breach of implied warranty of good faith and fair dealing, and promissory estoppel claims are DISMISSED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment be DENIED as to Plaintiff's FMLA claim.

IT IS SO ORDERED.

_____
G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

Anderson, South Carolina
March __8__, 2006.

13